UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

KHUSHI PRAKASH PATEL                                              PLAINTIFF

V.                                       CIVIL ACTION NO. 2:25-CV-118-KHJ-MTP

JOSEPH B. EDLOW, et al.                                         DEFENDANTS

ORDER

Before the Court is Defendants Joseph B. Edlow and Patrick Lemon's [6] Motion to Dismiss. For the reasons below, the Court grants the [6] Motion but allows Plaintiff Khushi Prakash Patel ("Patel") an opportunity to amend consistent with this Order.

I.     Background

This case arises from Patel's petition for special nonimmigrant status through what is known as the U-visa program. Before addressing the merits of the [6] Motion, the Court briefly explains the program.

A.  The U-visa Program

In October 2000, Congress created the U-visa program as part of the Victims of Trafficking and Violence Protection Act. *See* Victims of Trafficking and Violence Prevention Act of 2000, Pub. L. No. 106-386, Title V, § 1513, 114 Stat. 1464, 1533 (2000). The U-visa program is codified within the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101–1537, specifically in 8 U.S.C. § 1101(a)(15)(U). Congress delegated the administration of the U-visa program to the Department of Homeland Security ("DHS"). *See* 8 U.S.C. § 1103; *see also* 8 U.S.C. § 1101(a)(15)(U)(i).

Under the program, nonimmigrant aliens[1] who are the victims of certain crimes while in the United States can apply for "U nonimmigrant status" (a "U-visa") by filing a petition via Form I-918. *See* 8 U.S.C. § 1101(a)(15)(U); United States Citizenship and Immigration Services ("USCIS") Policy Manual, Vol. 3, Pt. C, Ch. 1 (B) (Dec. 22, 2025) ("Policy Manual").[2] If granted, the U-visa confers special legal status and automatic work authorization, known as an Employment Authorization Document ("EAD") for up to four years, which may be extended if deemed necessary. *See* 8 U.S.C. § 1184(p)(3)(B),(6); 8 C.F.R. § 214.14.(c)(7); 8 C.F.R. § 274a.12(a)(19). As long as a U-visa holder maintains U nonimmigrant status, he or she is not subject to removal or deportation. *See* 8 C.F.R. § 214.14(c)(5)(i).

Congress limited the number of U-visas that can be issued in a fiscal year to 10,000. *See* 8 U.S.C.A. § 1184 (p)(2)(A). All eligible petitioners who are denied a U-visa because of the annual limit are placed on a waiting list. And while on the list, they are granted deferred action[3] and may receive an EAD. *See* 8 C.F.R. § 214.14(d)(2).

Congress broadly requires DHS to establish regulations as its Secretary "deems necessary for carrying out his [or her] authority" under the INA, of which

---

[1] A nonimmigrant alien is any person who is not a citizen or national of the United States but is here only for a limited time and does not intend to stay permanently in the United States. *See* 8 U.S.C. § 1101(a)(3); *LeClerc v. Webb*, 419 F.3d 405, 418–19 (5th Cir. 2005).

[2] The USCIS Policy Manual can be accessed at https://www.uscis.gov/policy-manual/ (https://perma.cc/TJ75-D4L6) (last accessed 2/12/26).

[3] Deferred action is "essentially, permission to remain lawfully in the United States pending the issuance of a U Visa." *Hernandez v. Jaddou*, No. 4:24-CV-00453, 2025 WL 819657, at *1 (S.D. Tex. Mar. 6, 2025).

the U-visa program is a part.[4] 8 U.S.C. § 1103(a)(3). Despite this obligation, for years DHS did not establish any regulations for the U-visa program. *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 367 (4th Cir. 2021). That is because when Congress created the U-visa program in 2000, it did not *specifically* require DHS to implement it through regulations. *Id.* In 2006, Congress mandated that DHS promulgate regulations to implement the U-visa program. *See id.* USCIS—under DHS authority—did so in 2007, and the first U-visa issued in 2008. *Id.*

In 2008, as part of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Congress amended 8 U.S.C. § 1184 to add a permissive work authorization provision which states: "The Secretary may grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under [the U-visa program]." Pub. L. 110-457; 8 U.S.C. § 1184(p)(6). Once again, because the TVPRA did not specifically require DHS to promulgate regulations, it never did so. Instead, after amassing a backlog of petitioners, USCIS added a Bona Fide Determination Process ("BFD process") to its Policy Manual. *See generally,* USCIS Policy Alert 2021-13 (June 14, 2021) ("Policy Alert") at 1; Policy Manual, Vol. 3, Pt. C, Ch. 5 at 1.

---

[4] The phrase "provisions of this chapter" refers to Chapter 12 titled "Immigration and Nationality," which spans 8 U.S.C. §§ 1101–1537 and necessarily includes the U-visa program. And these regulations are contained in Title 8 of the Code of Federal Regulations, which with all its applicable provisions "creates a comprehensive, intricate web of regulations governing immigration." *Blanco v. Bondi*, No. 5-25-CV-01412-FB-RBF, 2025 WL 3908488, at *1 (W.D. Tex. Dec. 30, 2025) (citation modified) (citing 8 C.F.R. §§ 1–1399). The regulations addressing nonimmigrant classifications are contained in Part 214, and those specifically addressing petitions in the U-visa program, *i.e.*, "alien victims of certain qualifying criminal activity," are set forth in Section 214.14.

3

According to the Policy Manual,

> USCIS first determines whether a pending petition is bona fide. Second, USCIS, in its discretion, determines whether the petitioner poses a risk to national security or public safety, and otherwise merits a favorable exercise of discretion [to provide employment authorization]. If USCIS grants the alien a Bona Fide Determination Employment Authorization Document (BFD EAD) as a result of the BFD process, USCIS then also exercises its discretion to grant that alien deferred action for the period of the BFD EAD.

Policy Manual (Introduction) [12-2] at 1. If USCIS determines the U-visa application is *not* bona fide, USCIS "proceeds to a full adjudication to assess eligibility for waiting list placement." Policy Manual, Vol. 3, Pt. C, Ch. 5 (B) [12-2] at 3. "A petitioner who does not receive a BFD EAD and deferred action is evaluated for waiting list eligibility and still has the opportunity to obtain employment authorization and a grant of deferred action if deemed eligible for waiting list placement." Policy Manual, Vol. 3, Pt. C, Ch. 5 (C) [12-2] at 4; *see also* Policy Manual, Vol. 3, Pt. C, Ch. 6 (Waiting list) ("Officers initiate a waiting list adjudication for petitioners who do not receive employment authorization and deferred action based on the Bona Fide Determination (BFD) process.").[5]

B.  Facts and Procedural History

Taking the allegations of the [1] Complaint as true, Patel is an Indian citizen currently residing in the United States who was the victim of a crime in December

---

[5] These various avenues under the BFD process are laid out in the Appendix to the Policy Manual titled "Bona Fide Determination Process Flowchart" that can be found at https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf (https://perma.cc/ZF9Y-A2PA) (last visited 2/12/26). For a more thorough synthesis of the BFD process, *see Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 438–440 (6th Cir. 2022).

2024. Compl. [1] ¶¶ 1, 5. On March 14, 2025, Patel filed a Form I-918 Petition for U Nonimmigrant Status, along with an Application for Employment Authorization. *Id.* ¶ 1. Her U-visa petition and BFD EAD request have been pending with USCIS since March 18, 2025. *See* USCIS Notices of Action [1-2] at 1, [1-4] at 1. To date, USCIS has taken no action.

Patel seeks to compel USCIS to act. Patel asserts that, when she filed this action, her U-visa petition and work-authorization application had been pending with USCIS for more than 150 days, leaving her unable to work and uncertain about her future. [1] ¶¶ 33, 35; Pl.'s Resp. in Opp'n [12] at 1. Patel asks the Court to compel USCIS "to adjudicate and grant bona fide employment authorization ("EAD"), deferred action, and waiting list determinations." [1] ¶¶ 1, 2.[6]

Patel sued Joseph B. Edlow, the Director of USCIS, and Patrick Lemon, the United States Attorney for the Southern District of Mississippi (collectively "the Government"). [1] ¶¶ 5–6. Patel asserts federal question jurisdiction under the Administrative Procedure Act ("APA"), the INA, and the Mandamus Act, claiming there has been an unreasonable delay in USCIS's determination of certain immigration benefits. [1] ¶¶ 3, 33–35. The Government moves to dismiss, arguing that the Court lacks subject-matter jurisdiction and that Patel has failed to state a claim. Mot. to Dismiss [6].

---

[6] In her ad damnum clause, Patel also asks the Court to "[d]eclare that Defendants have a duty to grant Plaintiffs bona fide employment authorizations, deferred action and waiting list determinations." This request is better suited to a declaratory-judgment action, which Patel has not brought.

II.      Standard

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge a district court's subject-matter jurisdiction to hear a case. "[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citation modified). In evaluating subject-matter jurisdiction on a motion to dismiss, a court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. Heeremac Vof*, 241 F.3d 420, 424 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion, a court must accept all factual allegations in the complaint as true. *See id.* The burden of establishing subject-matter jurisdiction falls on the party asserting it. *Hartford Ins. Grp. v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

A motion to dismiss under Rule 12(b)(6) asserts that the plaintiff has failed to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, "[t]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citation modified). A valid claim for relief contains "sufficient factual matter, accepted as true," giving the claim "facial plausibility" and allowing "the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). The plausibility standard does not ask for a probability of

unlawful conduct but does require more than a "sheer possibility." *Id.* The Court must accept all factual allegations in the complaint as true, but it is not bound to accept legal conclusions, conclusory statements, or bare assertions without factual support. *Id.*

III.   Analysis

In short, Section 1252(a)(2)(B)(ii) strips jurisdiction to review (or compel) USCIS's discretionary decision whether to grant a BFD EAD, so that portion of Patel's requested relief is dismissed for lack of jurisdiction. But the Court retains jurisdiction over Patel's requests concerning waiting-list determinations and deferred action. Even so, the complaint does not plausibly allege a discrete, nondiscretionary duty that USCIS must perform, and it therefore fails to state a claim for relief under Section 706(1) or mandamus. The Court still grants Patel leave to amend to attempt to plead a viable claim consistent with this Order.

A.  Subject-Matter Jurisdiction

When a defendant moves under Rule 12(b)(1) along with other Rule 12 defenses, the Court addresses jurisdiction first. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

Section 702 of the APA generally authorizes judicial review of "agency action," including a "failure to act." 5 U.S.C. §§ 702, 551(13). It also requires agencies to conclude matters "within a reasonable time." 5 U.S.C. § 555(b). And it directs reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also Norton v. S. Utah Wilderness All.*

*(SUWA)*, 542 U.S. 55, 61–62 (2004) (noting that Section 706(1) provides relief for a "failure to act").

But Section 702's presumption of reviewability yields when a statute bars review or commits the challenged action to agency discretion. 5 U.S.C. § 701(a)(1)–(2); *see Webster v. Doe*, 486 U.S. 592, 597 (1988); *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018).

The Government invokes Section 701's first limitation. Defs.' Mem. in Supp. [7] at 6–7. Although federal courts ordinarily have subject-matter jurisdiction over APA claims under 28 U.S.C. § 1331, the Government argues that the INA withdraws jurisdiction here. And it directs the Court to 8 U.S.C. § 1252(a)(2)(B). *See, e.g., Flores-Garza v. I.N.S.*, 328 F.3d 797, 801 (5th Cir. 2003) (calling Section 1252(a)(2)(B) the "jurisdiction-stripping" provision of the INA). That provision says no court has jurisdiction to review the following:

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B).

To decide whether Section 1252(a)(2)(B) bars jurisdiction, the Court must identify the agency action Patel asks the Court to compel and then determine whether the INA specifies that action as discretionary. The Court begins with the

8

statutory text. *See Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024). Again, this Court has no jurisdiction to review

> any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter to be in the discretion* of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

The Supreme Court has construed "specified under this subchapter" to require a statutory grant of discretion, not discretion supplied by regulation. *Kucana v. Holder*, 558 U.S. 233, 238 (2010). And "this subchapter" refers to United States Code Title 8, Chapter 12, Subchapter II, codified at 8 U.S.C. §§ 1151–1381. *Id.* at 239 n.3. Put differently, Section 1252(a)(2)(B)(ii) applies only if an INA provision "expressly and specifically vest[s] discretion" in the agency. *Flores v. Garland*, 72 F.4th 85, 89 (5th Cir. 2023) (citation modified).

The Court therefore must evaluate each action Patel seeks to compel and determine whether the INA specifies that action as discretionary.[7]

---

[7] The briefing obscures what agency action Patel asks the Court to compel. The [1] Complaint seeks an order compelling USCIS "to adjudicate and grant bona fide employment authorization, deferred action, and waiting list determinations." [1] ¶¶ 1–2. But Patel now disclaims any request to compel USCIS to grant a BFD EAD and recasts the claim as a request only that USCIS conduct the BFD process and issue a determination. [12] at 1–2, 6, 12. Although the Court may consider evidence outside the pleadings on a Rule 12(b)(1) motion, a plaintiff may not amend the complaint through a response brief. *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (citation modified). The Court therefore analyzes jurisdiction based on the allegations and requested relief in the Complaint.

1. BFD EAD

Patel first seeks to compel USCIS to "adjudicate and grant bona fide employment authorizations." [1] ¶¶ 1, 2. That request targets a discretionary agency action.

In addressing U-visas, the INA provides that "[t]he Secretary *may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title." 8 U.S.C. § 1184(p)(6) (emphasis added). "[T]he word 'may' clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (citation modified). USCIS guidance reflects the same point: after USCIS finds a petition bona fide, it "determines whether to exercise its discretion to issue a BFD EAD." Policy Manual, Vol. 3, Pt. C, Ch. 5(B) [12-2] at 2. Patel does not dispute that the decision whether to grant a BFD EAD is discretionary. *See* [12] at 1–2.

Because the INA specifies that the decision to grant a BFD EAD is discretionary, Section 1252(a)(2)(B)(ii) bars judicial review of—and thus deprives this Court of jurisdiction to compel—that action. The Court therefore dismisses this claim for lack of subject-matter jurisdiction.

2. Waiting-List Determination

Patel also seeks an order compelling USCIS to adjudicate and grant waiting-list determination. [1] ¶¶ 1, 2. It is unclear which of the two waiting-list mechanisms Patel invokes, but either way Section 1252(a)(2)(B)(ii) does not bar review because neither mechanism is specified by statute as discretionary.

10

First, the INA's 10,000-visa cap requires placement on a waiting list by regulation. *See* 8 C.F.R § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status *must* be placed on a waiting list . . . ." (emphasis added)). That "must" language reflects a nondiscretionary duty, not a discretionary choice. *Cf.* 8 U.S.C. § 1184(p)(6) (the Secretary "may" grant work authorization); *Bouarfa*, 604 U.S. at 13 ("[T]he word 'may' clearly connotes discretion.") (citation modified). And in any event, this waiting-list mechanism arises from regulation, not a statutory provision that "expressly and specifically" vests discretion. It therefore is not an action "specified under this subchapter to be in the discretion" of the agency under Section 1252(a)(2)(B)(ii).

Second, USCIS may also evaluate a petition for waiting-list eligibility during the BFD process. *See* Policy Manual, Vol. 3, Pt. C, Ch. 6 (Waiting list). But the BFD process itself "is not found in a regulation or a statute." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 443 (6th Cir. 2022). So even if this waiting-list determination entails discretion, it is not discretion "specified under this subchapter" by statute.

Because neither waiting-list mechanism is specified by statute as discretionary, Section 1252(a)(2)(B)(ii) does not strip jurisdiction on this ground. The Court therefore denies the Government's motion to dismiss for lack of subject-matter jurisdiction as to this requested relief.

    3.   Deferred Action

Patel also seeks to compel USCIS to adjudicate and grant deferred action. [1] ¶¶ 1, 2. In the U-visa context, deferred action arises through mechanisms described

11

in regulation and agency guidance, not an INA provision that "expressly and specifically" vests discretion by statute. *See* 8 C.F.R. § 214.14(c)(5)(i) (deferred action upon approval of U nonimmigrant status); *id.* § 214.14(d)(2) (deferred action for petitioners placed on the waiting list due solely to the cap); Policy Manual, Vol. 3, Pt. C, Ch. 5(B) [12-2] at 2–3 (describing deferred action as part of the BFD process). Because Patel's deferred-action request does not concern an action "specified under this subchapter to be in the discretion" of the agency by statute, Section 1252(a)(2)(B)(ii) does not bar review on that ground. The Court therefore has jurisdiction to adjudicate this claim.

But the Government adds one more argument on this front. It says the Court lacks jurisdiction because the "pace of adjudication" is discretionary. *See* [7] at 6–7, 9–10. For that proposition, it relies on two cases: *Beshir v. Holder*, 10 F. Supp. 3d 165 (D.D.C. 2014) and *Cheejati v. Blinken* 106 F.4th 388 (5th Cir. 2024). Those decisions, however, addressed adjustment adjudications under different statutes— principally 8 U.S.C. §§ 1255(a) and 1259(b)—and rested on statutory text specific to that adjustment framework.[8] And the Government has not shown that *Cheejati* announced a categorical rule that the "pace of adjudication" is discretionary for every immigration benefit.

---

[8] "Two analogous statutes, 8 U.S.C. § 1159(b) and 8 U.S.C. § 1255(a), are relevant to the adjudication of adjustment applications, and *their plain language* supports the conclusion that the pace of adjudication is discretionary." *Beshir*, 10 F. Supp. 3d at 173.

12

For these reasons, the Court declines to extend *Cheejati* or *Beshir* to this case, whether for jurisdiction under Rule 12(b)(1) or for the merits under Rule 12(b)(6).

B.  Failure to State Claim

Patel seeks to state a claim under the APA for unreasonable delay under 5 U.S.C. § 706(1), which provides that the federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." But Section 706(1) is narrow. "[A] claim under [Section] 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis in original). Put differently, "[a] court's authority to compel agency action is limited to instances where an agency ignored 'a specific, unequivocal command' in a federal statute or binding regulation." *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 197 (5th Cir. 2023) (citation modified).

Mandamus tracks the same requirement that the plaintiff identify a clear, nondiscretionary duty. For mandamus relief Patel must establish (1) that she has a clear right to relief, (2) that USCIS has a clear duty to act, and (3) no other adequate remedy exists. *See Wolcott*, 635 F.3d at 768 (citation omitted). Courts may only "compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *Fort Bend*, 59 F.4th at 197 (citation modified).

The Government argues that Patel has failed to state a claim under both the APA and the Mandamus Act because she has shown neither a clear non-discretionary act nor a clear duty to act that USCIS is required to take. [7] at 8. On

13

a motion to dismiss, the Court must consider whether Patel adequately pleaded that USCIS was required to act. *See Fort Bend*, 59 F.4th at 197. At this stage, the question is whether Patel has plausibly alleged that USCIS was required—by statute or binding regulation—to take the action she seeks to compel.

Patel makes several allegations about USCIS's waiting-list placement and deferred action duties both during the adjudication of the U-visa itself and the BFD process. [9] [1] ¶¶ 17, 19, 24, 38, 39. The Court therefore begins with the sources of authority for those actions and asks whether they impose a discrete, nondiscretionary duty that the Court may compel under Section 706(1) or mandamus.

1. Waiting list and deferred action in U-visa adjudication

For waiting-list placement and deferred action in the U-visa adjudication process, the operative authority appears in the regulations. *See* 8 C.F.R. § 214.14(d)(2). The Court looks first to the regulation's plain language. *Fort Bend*, 59 F. 4th at 197 (citation modified). If the regulation's language is unambiguous, the Court applies its plain meaning. *Id*. But the Court must also read the regulation's language in the "specific context in which that language is used." *Id*. (citation modified).

The regulation provides that "[a]ll eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status *must* be placed on a waiting list." 8 C.F.R. § 214.14(d)(2) (emphasis added). Although "must" signals a mandatory duty,

---

[9] The Court will not address any allegations about work authorizations because the Court dismissed that claim for lack of jurisdiction.

14

that duty is conditional. The text applies only to petitioners who are "eligible" and who are not granted U–1 status "due solely" to the 10,000-visa annual cap.

Those conditions matter for pleading purposes. Placement on the waiting list is mandatory after USCIS determines eligibility and that the cap alone prevents issuance. And those antecedent determinations are not ministerial. *See* 8 C.F.R. § 214.14(c)(1)–(3). Patel does not allege that USCIS has found her eligible or that the cap has been reached for the relevant year. Absent those predicates, Patel has not plausibly alleged a discrete, nondiscretionary duty to place her on the waiting list that the Court may compel.

The same is true for deferred action. Deferred action is derivative of waiting-list placement under the same regulation. Section 214.14(d)(2) states that USCIS will grant deferred action to petitioners placed on the waiting list. *See* 8 C.F.R. § 214.14(d)(2). So the deferred-action request rises or falls with the waiting-list predicates. Because Patel has not plausibly alleged entitlement to waiting-list placement under Section 214.14(d)(2), she likewise has not stated a plausible claim for unreasonable delay in deferred action tied to waiting-list placement during U-visa adjudication.

2. Waiting list and deferred action in BFD process

Patel alleges that USCIS has a regulatory, ministerial obligation to issue, within a reasonable time, deferred action status or waitlist determinations for individuals who have presented bona fide petitions for U nonimmigrant status. [1] ¶ 38. But "a delay cannot be unreasonable with respect to action that is not required." *SUWA*, 542 U.S. at 63 n.1.

15

Patel fails to state a plausible claim for unreasonable delay in obtaining deferred action during the BFD process for two reasons. First, the BFD process is described in the Policy Manual, not in a federal statute or binding regulation. *See* Policy Manual, Vol. 3, Pt. C, Ch. 5. Thus, it is not an "unequivocal command in a federal statute or binding regulation" that this Court can compel. *Fort Bend*, 59 F.4th at 197. Second, even taking the Policy Manual's description at face value, it frames deferred action during the BFD process as discretionary. The Policy Manual explains that USCIS considers "discretionary factors," and "determines whether to exercise its discretion to issue a BFD EAD and grant deferred action." Policy Manual, Vol. 3, Pt. C, Ch. 5 (B). That language negates any nondiscretionary duty to grant deferred action at the BFD stage. Patel therefore fails to state a claim for unreasonable delay in being granted deferred action during the BFD process.

Patel's allegations fare no better as to any waiting-list determination during the BFD process. The Policy Manual provides that "[a] petitioner who does not receive a BFD EAD and deferred action is evaluated for waiting list eligibility and still has the opportunity to obtain employment authorization and a grant of deferred action if deemed eligible for waiting list placement." Policy Manual, Vol. 3, Pt. C, Ch. 5 (C) [12-2] at 4. By its terms, this evaluation occurs only after USCIS has made (and denied) the initial BFD determination. Patel does not allege facts showing that those predicates have occurred here. So she has not plausibly alleged a discrete, required action that USCIS has unlawfully withheld or unreasonably

delayed. Patel therefore fails to state a claim for unreasonable delay in a waiting-list determination during the BFD process.[10]

3. Leave to Amend

In her [12] Response, Patel disclaims some of the relief requested in the [1] Complaint and reframes her theory as a challenge to USCIS's alleged "failure to take timely action—what she calls "a duty to act subject to judicial oversight." [12] at 1–2. She asks the Court to compel USCIS to conduct the BFD process regardless of the outcome. *Id.* at 8. Patel urges that the initial BFD determination is not discretionary. *Id.* at 6. And that the discretion in granting BFD EADs arises only after USCIS makes the initial non-discretionary bona fide determination. *See id.* Because Patel did not present this theory in her [1] Complaint, the parties have not had a fair opportunity to brief it.

For that reason, although Patel does not request leave to amend, the Court addresses the issue. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Granting leave to amend, however, is not required if the plaintiff has already pleaded her 'best case.'" *Wiggins v. LSU—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009)). "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the

---

[10] The parties also address Patel's ability to state a claim for an "unreasonable delay" by analyzing what constitutes an unreasonable delay under the "TRAC factors" set forth in *Telecommunications Rsch. and Action Center v. FCC,* 750 F.2d 70 (D.C. Cir. 1984). The Court finds that analysis premature at this stage because it goes to the merits of whether any delay is unreasonable, not whether Patel has pleaded a required, discrete action that the Court may compel.

defect is simply incurable . . . ." *Hart v. Bayer Corp.,* 199 F.3d 239, 248 n.6 (5th Cir. 2000)). And the Court need not allow amendment if it would be futile. *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000).

Patel has already pleaded her best case for the mandamus relief sought in the [1] Complaint, and amendment as to that relief would be futile. But because Patel's [12] Response attempts to pivot to a different theory and different relief, the Court will give Patel a chance to amend to assert any viable claim consistent with this Order, if she chooses.

IV.  Conclusion

For the reasons stated above, the Court GRANTS the [6] Motion and dismisses Patel's claims with prejudice. Patel may file an amended pleading that complies with this Order no later than 20 days after the entry of this Order. If Patel does not timely file an amended pleading, the Court may dismiss this action without further notice.

The Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision.

SO ORDERED, this 17th day of February, 2026.

s/ *Kristi H. Johnson*  
UNITED STATES DISTRICT JUDGE